IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GRISHELDA JACKSON, | : | No.  4:CV-05-1304 |
| Plaintiff | : | (Judge Jones) |
| | : | |
| v. | : | (Magistrate Judge Smyser) |
| | : | |
| SHIRLEY MOORE, JEFFREY BEARD, | : | |
| DR. RODRIGUEZ, CORRECTION | : | |
| OFFICER JOHNSON, KAREN RODGERS,: | | |
| and LIEUTENANT MOSER, | : | |
| Defendants | : | |

**MEMORANDUM AND ORDER**

February 15, 2006

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

The Plaintiff, Grishelda Jackson ("Plaintiff" or "Jackson"), a former inmate at SCI-Muncy, filed this complaint on June 29, 2005 pursuant to 42 U.S.C. §1983. The Defendants are Jeffrey Beard ("Beard"), the Secretary of the Department of Corrections, Shirley Moore ("Moore"), the Superintendent of SCI-Muncy, Dr. Rodriguez ("Dr. Rodriguez"), a institutional doctor at SCI-Muncy, Karen Rodgers ("Rodgers"), a Unit Manager at SCI-Muncy, SCI-Muncy prison Lieutenant Moser ("Moser"), and Correctional Officer Johnson ("Johnson").

The case was referred to United States Magistrate Judge J. Andrew Smyser.

1

Dr. Rodriguez filed a Motion to Dismiss (doc. 8) on August 24, 2005.  Thereafter,

the remaining Defendants filed a Motion to Dismiss (doc. 12) on September 12,

2005.  Both Motions were fully briefed by the parties.  On December 27, 2005,

Magistrate Judge Smyser issued a Report and Recommendation (doc. 20),

recommending that this Court dismiss most of the causes of action and Defendants

set forth in the complaint, except as to the claim of excessive use of force against

Defendant Johnson.

Objections to Magistrate Judge Smyser's Report were due January 17, 2006.

On January 11, 2006, Plaintiff filed objections to the Magistrate Judge's Report

(doc. 21) and on January 24, 2006, Dr. Rodriguez filed a response to the Plaintiff's

objections.  (Rec. Doc. 22).  This matter is now ripe for disposition.

**STANDARD OF REVIEW:**

When objections are filed to a report of a magistrate judge, we make a *de*

*novo* determination of those portions of the report or specified proposed findings

or recommendations made by the magistrate judge to which there are objections.

See United States v. Raddatz, 447 U.S. 667 (1980); see also 28 U.S.C. §636(b)(1);

Local Rule 72.3l.  Furthermore, district judges have wide discretion as to how they

treat recommendations of a magistrate judge.  See id.  Indeed, in providing for a *de*

*novo* review determination rather than a *de novo* hearing, Congress intended to

2

permit whatever reliance a district judge, in the exercise of sound discretion,

chooses to place on a magistrate judge's proposed findings and recommendations.

See id., see also Mathews v. Weber, 423 U.S. 261, 275 (1976); Goney v. Clark,

749 F.2d 5, 7 (3d Cir. 1984).

## FACTUAL AND PROCEDURAL BACKGROUND:

Jackson alleges the following facts in her complaint with respect to her

Eighth Amendment claim.  (Rec. Doc. 1).  On July 28, 2001, Jackson suffered a

brain aneurysm which subsequently caused her to have seizures and a headache

disorder.  Her neurologist prescribed the drug Nuerontin for her disorder, and she

alleges that this medication stopped her headaches, seizures and vertigo.  After her

arrival at SCI-Muncy, Jackson was prescribed Dilantin[1] instead of Nuerontin.  On

February 17, 2004, Dr. Calvin Vermiere, a doctor at SCI-Muncy, examined

Jackson and told her she would not be prescribed Nuerontin while at SCI-Muncy,

nor would she see a neurologist.  He further told her that her seizure condition

should be healed after twelve months.

On February 19, 2004, Jackson wrote a request to the medical director of

SCI-Muncy, complaining that as a result of her change in medication, she was

---

[1] Prior to her incarceration, Jackson had been prescribed Dilantin, however her doctor took
her off this medication because she suffered a seizure while taking it.  Instead, he prescribed Nuerontin,
which she alleges successfully curbed her seizures.

3

experiencing headaches daily, as well as tremors.  Dr. Vermiere responded to her

complaint, noting that when he saw Jackson on February 18, 2004, he told her that

head trauma reaches a point of maximum improvement in one year, therefore her

injury should be stable now, and that she had just had a complete physical and

bloodwork which was almost totally normal.  Further, he told her she would not be

receiving Nuerontin and there was no present need for her to see a neurologist.

Jackson subsequently submitted a grievance regarding her medication change to

Moore, the Superintendent of SCI-Muncy.  Moore thereafter denied the appeal,

stating that Jackson had seen a physician on March 12, 2004, was scheduled to be

seen again on April 2, 2004 and was receiving an appropriate level of healthcare.

Throughout 2003 and 2004, Jackson was given Neurontin, Dilantin and

Tegradol for her seizures.  She alleges that her medications were switched and

stopped for periods of time for no apparent reason.  On May 28, 2004 Jackson

suffered a seizure and alleges she saw Beard the following day and told him about

her medical issues.  She was contacted the next day by the medical records

department.

In June of 2004, Dr. Rodriguez told Jackson that she had genital warts and

required a biopsy.  After the biopsy, she was told she needed to have cryosurgery.

On November 17, 2004, Dr. Rodriguez performed the cryosurgery on Jackson and

afterwards she was told that she would suffer vaginal discharge for no more than four weeks.  Jackson alleges that on December 8, 2004, she told Dr. Rodriguez that she was experiencing vaginal bleeding and that it was not due to her menstrual period because her cycle had ended over five years earlier.

On January 13, 2005, Jackson reported for an annual checkup, during which a physician assistant would not give her a pap smear test because she said that Jackson had lesions inside her vaginal cavity.  During this same checkup, Plaintiff alleges that Dr. Rodriguez told her "she was okay" and as a result he did not perform a pap smear test on Plaintiff either.  On February 9, 2005, Jackson was re-examined by Dr. Rodriguez, during which time she told him that she was afraid for him to examine her and he prescribed her a vaginal gel.  Thereafter, on February 23, 2004, a physician assistant gave Jackson a pap smear test.

Jackson also alleges that she was moved to a housing unit on April 2, 2004. She alleges that she shared the unit with nine other women, one of whom openly shared the fact that she had shingles.  Jackson claims that she contracted a rash during this time and was given a topical ointment by an unnamed doctor who described the rash as ringworm.

Plaintiff also lists a series of allegations that relate to her Fifth Amendment claims.  On August 27, 2004, Plaintiff states that she was "snatched" from her cell

and thrown against a wall by C.O. Johnson, who put his knee in her back and handcuffed her, because she had gotten into an altercation with her cellmate. Jackson believed her cellmate to be stealing her belongings.  As a result of the misconduct, Jackson was charged with an assault on her cellmate and kept in the Restricted Housing Unit for thirty three days without any of her belongings.  After this incident, Jackson wrote numerous grievances alleging that she believed her Fifth and Eight Amendment rights were violated, because she lost her property and liberty and was not examined for an injury after she was subjected to excessive force.

**DISCUSSION**:

    **A.**    **Motion to Dismiss Standard of Review**

In considering a motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6), a court must accept the veracity of a plaintiff's allegations.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also White v. Napoleon, 897 F.2d 103, 106 (3d Cir. 1990).  In Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996), our Court of Appeals for the Third Circuit added that in considering a motion to dismiss based on a failure to state a claim argument, a court should "not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims."  Furthermore, "a complaint should not be dismissed for failure to state a

claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also District Council 47 v. Bradley, 795 F.2d7 310 (3d Cir. 1986).

### B.    Analysis

### 1.    Defendant Rodriguez

Defendant argues that Plaintiff has failed to state an Eighth Amendment medical claim against him upon which relief can be granted.  In order to establish an Eighth Amendment medical claim, the Plaintiff must show that the defendant acted with deliberate indifference to her serious medical needs.  See Estelle v. Gamble, 429 U.S. 97 (1976).  The concept of serious medical need has two components, involving the consequences of the failure to treat and the obviousness of those consequences.  See Colburn v. Upper Darby Twp., 946 F. 2d 1017, 1023 (3d Cir. 1991). The condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury or death.  Also, the condition must be one that has been diagnosed by a doctor as requiring treatment or one that is so obvious that a lay person would easily recognize the need for a doctor's attention.

Mere medical malpractice does not give rise to an Eighth Amendment claim for deliberate indifference to a serious medical need.  See White v. Napoleon, 897

F.2d 103, 108 (3d Cir. 1990).   "While the distinction between deliberate

indifference and malpractice can be subtle, it is well established that as long as a

physician exercises professional judgment his behavior will not violate a prisoner's

constitutional rights."  <u>Brown v. Borough of Chambersburg</u>, 903 F.2d 274, 278 (3d

Cir. 1990).  The Court of Appeals for the Third Circuit has found "deliberate

indifference in a variety of circumstances, including where the prison official (1)

knows of a prisoner's need for medical treatment but intentionally refuses to

provide it; (2) delays necessary medical treatment based on a non-medical reason;

or (3) prevents a prisoner from receiving needed or recommended medical

treatment."  <u>Rouse v. Plantier</u>, 182 F.3d 192, 197 (3d Cir. 1999).

     Magistrate Judge Smyser finds, and we agree, that a reasonable construction

of the Plaintiff's allegations is that she has a serious medical condition.  Further, we

also concur with Magistrate Judge Smyser's finding that it is <u>not</u> a reasonable

construction of the Plaintiff's allegations that Dr. Rodriguez knew of a need for

medical treatment but intentionally refused to provide it, delayed necessary

treatment based on a non-medical reason, or prevented the Plaintiff from receiving

needed or recommended medical treatment.  Dr. Rodriguez performed the

necessary cryosurgery on Plaintiff and thereafter gave her a gel to use when she

complained of continued bleeding, less than four weeks after her surgery.  Further,

a pap smear test was performed on Plaintiff within about four months of her

surgery.  Although Dr. Rodriguez did not perform the test himself, it appears that

the physician assistant was directed to perform the test due to the Plaintiff's

complaint that she was "afraid" to have Dr. Rodriguez examine her.  It is clear to

the Court that Magistrate Judge Smyser was correct in his conclusion that the

Plaintiff's allegations fall short of asserting an Eighth Amendment medical claim

against Dr. Rodriguez.

### 2.      Defendants Moore and Beard

Magistrate Judge Smyser finds that there is no basis in the Plaintiff's

complaint, construing the allegations therein in the light most favorable to the

Plaintiff, for a reasonable inference to be drawn that Defendants Moore and Beard

were deliberately indifferent to Plaintiff's serious medical needs.  Plaintiff did

complain to both Moore and Beard about the change in her medication, however

this allegation does not support a reasonable inference of deliberate indifference to

the Plaintiff's serious medical needs, but merely raises an inference of a change in a

prescription regimen.  Moreover, the day after Jackson complained to Beard, she

was contacted by the medical records department.  We agree with Magistrate Judge

Smyser that a fair reading of Plaintiff's allegations against Defendants Beard and

Moore do not support a claim for deliberate indifference to serious medical needs.

### **3.**      **Defendant Moser**

Magistrate Judge Smyser finds that the complaint does not state any claims against Defendant Moser, in light of the fact that the complaint does not even *name* Defendant Moser.  The only references to Moser are found in the exhibits attached to the complaint.  Magistrate Judge Smyser notes, and we agree, that Fed. R. Civ. P. 8 requires notice pleading; a short and plain statement of the claim showing that the pleader is entitled to relief. In light of the fact that the Plaintiff does not even name Defendant Moser in the body of her complaint, she clearly has not stated a claim upon which relief can be granted against Defendant Moser.

### **4.**      **Defendant Rodgers**

The Plaintiff's claim against Defendant Rodgers stems from Rodgers' alleged failure to preserve the personal property of Plaintiff against loss or taking of that property by way of a theft by a cellmate or by way of the loss of the property when Plaintiff was confined in the restricted housing unit for thirty three days following her misconduct.  Plaintiff is claiming that her property was taken without due process of law.

A due process inquiry requires a court to determine whether the plaintiff was deprived of a protected interest and if so, what process was due that individual.

10

See Logan v. Zimmerman Brush Co., 455 U.S. 422, 428 (1982).  "Due process is

flexible and calls for such procedural protections as the particular situation

demands." Matthews v. Eldridge, 424 U.S. 319, 334 (1976).  The following factors

are considered in determining what process is due: 1) the private interest that will be

affected; 2) the risk of an erroneous determination and the probable value of

additional procedural safeguards; and 3) the government's interest, including the

function involved and the fiscal and administrative burdens that additional

procedures would entail. See id. at 335.  Although generally a pre-deprivation

hearing is required before an individual is to be deprived of a significant property

interest, see Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 19, (1978), in

extraordinary circumstances requiring quick action or involving the impracticality of

providing any meaningful pre-deprivation process, the government may dispense of

a hearing prior to deprivation.  See Logan, 455 U.S. at 436.

     The Supreme Court has held that a random, unauthorized, negligent

deprivation by state officials of a prisoner's personal property is not actionable

under federal constitutional law where an appropriate state law remedy for

reimbursement exists.  See Paratt v. Taylor, 451 U.S. 527, 535 (1981).  Where a

state remedy exists, there is no "final taking" for purposes of the Fourteenth

Amendment.  See Hudson v. Palmer, 468 U.S. 517 (1984).  The basis for the

holdings in <u>Paratt</u> and <u>Hudson</u> is that when the loss of property is through a random and unauthorized act by a state employee, the state cannot predict when the loss will occur and thus the state cannot provide a meaningful hearing before the deprivation takes place.  However, when the property loss is attributable to an established or *de facto* policy, procedure or custom, the state has the power to control the deprivation and must provide a pre-deprivation hearing, absent any exceptions.  <u>See</u> <u>Gillihan v. Shillinger</u>, 872 F.2d 935, 939 (10th Cir. 1989).

In her complaint, Jackson does not allege that her property was taken pursuant to an established policy or procedure, nor does she allege that the property was intentionally taken or destroyed by Defendant Rodgers or any other named Defendant.  Therefore, we agree with Magistrate Judge Smyser's finding that the Plaintiff has not stated a claim upon which relief can be granted with respect to Defendant Rodgers.

Defendants also generally argue that the complaint should be dismissed as to Plaintiff's claims that her due process rights were violated during the disciplinary process that culminated in her confinement in the restricted housing unit, after she had been cited for fighting with another inmate.

The process due an inmate facing a serious institutional misconduct charge is well established.  First, the prisoner must receive written notice of the charges

12

against her no less than twenty-four hours before the hearing.  Second, the prisoner must be given a written statement by the fact-finders of the evidence relied on and the reasons for the disciplinary action taken.   Third, the inmate must be afforded a qualified right to call witnesses and present documentary evidence in her own defense.  Also, an illiterate inmate is entitled to assistance from a fellow inmate.  <u>See Wolff v. McDonell</u>, 418 U.S. 539, 564-571 (1974).  Finally, the decision of the fact-finder must be supported by some evidence in the record. <u>See Superintendent v. Hill</u>, 472 U.S. 445 (1985).

Notably, due process is required when a prisoner is transferred to disciplinary confinement only when those conditions of confinement represent a significant and atypical hardship in relationship to the ordinary incidents of prison life.  <u>See Griffin v. Vaughn</u>, 112 F.3d 703, 706 (3d Cir. 1997); <u>see also Sandin v. Conner</u>, 515 U.S. 472 (1995).  In <u>Griffin</u>, the Court of Appeals for the Third Circuit held that an administrative confinement of an inmate for fifteen months fell within the expected parameters of his sentence.

Magistrate Judge Smyser finds that Plaintiff's confinement for thirty three days as a result of disciplinary misconduct is not a significant or atypical hardship in relation to the ordinary incidents of prison life, and therefore the due process requirements of <u>Wolff</u> did not need to be met.  In light of the ruling in <u>Griffin</u>, we

13

fully agree with Magistrate Judge Smyser's finding that the thirty-three days of disciplinary confinement at issue here falls within both the ordinary realm of prison life and the expected parameters of this inmate's sentence.  Therefore, we concur with Magistrate Judge Smyser's conclusion that the complaint does not state a claim upon which relief can be granted for a due process violation.

**5.      Defendant Johnson**

The Defendants do not move this Court to dismiss any claims against Defendant Johnson in their Motion (doc. 8), therefore we will not analyze the viability of that claim in this Order.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The Report and Recommendation (doc. 20) is ADOPTED in its

   entirety.

2.      The complaint (doc. 1) is DISMISSED against Defendants Beard,

   Moore, Rodgers and Dr. Rodriguez.  Defendant Johnson shall remain

   as a Defendant in this matter.

3.      This case is remanded to Magistrate Judge Smyser for disposition of

   any further pre-trial motions.

<u>s/ John E. Jones III</u>
John E. Jones III
United States District Judge